ORIGINAL



Ronald L.M. Goldman, Bar No. 33422
rgoldman@baumhedlundlaw.com
Mark Schlein, FL Bar No. 000700
mschlein@baumhedlundlaw.com
(*Pro Hac Vice to be submitted*)
Baum Hedlund Aristei & Goldman, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Tel: 310-207-3233
Fax: 310-207-4204

*Attorneys for Relator Linda DiBenedetto*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

UNITED STATES OF AMERICA,

*ex rel.* LINDA DIBENEDETTO,

PLAINTIFF AND RELATOR,

v.

VALLEY VIEW DRUGS, INC.; DAVID
MICHAEL JENSEN; PRO-MED
MARKETING, LLC; JOHN PAL SINGH
JANDA; WESTERN MEDICAL
SOLUTIONS, INC.; GARY DEAN
SCHOONOVER; SAMIA SOLUTIONS,
LLC; MICHAEL STEVEN SINEL;
MICHAEL DAVID ROUB; EDWARD'S
HEALTHY LIVING PHARMACY, INC.;
TROJAN MEDICAL BILLING, INC.;
JOHN DOE 1-15, AND JANE DOE 1-15,

DEFENDANTS.

CIVIL ACTION NO.

CV16 - 05504 - CAS (AJW x)

FALSE CLAIMS ACT
COMPLAINT AND DEMAND
FOR JURY TRIAL

FILED IN CAMERA AND
UNDER SEAL PURSUANT TO
31 U.S.C. § 3730(b)(2)

DO NOT PLACE IN PRESS BOX
DO NOT ENTER ON PACER

Linda DiBenedetto ("Relator") brings this action on behalf of the United States of America ("United States") for treble damages and civil penalties arising from the conduct of Defendants Valley View Drugs, Inc. ("Valley View"); David Michael Jensen (Jensen); Pro-Med Marketing, LLC ("Pro Med"); John Pal Singh Janda; Western Medical Solutions, Inc.; Gary Dean Schoonover; Samia Solutions, LLC; Michael Steven Sinel; Michael David Roub; Edward's Healthy Living Pharmacy, Inc.; Trojan Medical

FALSE CLAIMS ACT COMPLAINT

Billing, Inc.; John Doe 1-15, and Jane Doe 1-15, (collectively referred to as "defendants"), in violation of the Federal Civil False Claims Act, 31 U.S.C. § 3729, et seq. ("FCA"). The violations arise out of false claims for payment made to TRICARE, Medicare, Medicaid and other federally funded government healthcare programs (hereinafter collectively referred to as "Government Healthcare Programs").

1.   Defendants have defrauded government healthcare programs for tens of millions of dollars by illegally billing prescriptions and abusing patients' needs for prescription pain and other medications.

2.   The scheme primarily involved the prescribing of "compounded medications" to military veterans and the elderly suffering from an assortment of ailments.

3.   In general, compounding is a practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug to create a medication tailored to the needs of an individual patient.[1] Permitting the use of compounded drugs is essential to those individuals who have allergies to the ingredients or dyes in certain prescription medications, cannot swallow pills or those that have unique needs.

4.   Compounded drugs are not Food and Drug Administration approved. This means that the FDA does not verify the safety, or effectiveness of compounded drugs. It also provides wide latitude for criminal activity in the processing, prescribing, mailing, billing and sale of these drugs.

5.   One of the largest growing areas of prescription fraud in the United States involves "compounded" pharmaceuticals. The products made by compounding pharmacies, which mix pharmaceutical and prescription ingredients to meet specialized

---

[1] http://www.fda.gov/Drugs/GuidanceComplianceRegulatoryInformation/PharmacyCompounding/ucm339764.htm#what

medical needs, often for people who have difficulty taking pills, are not as tightly
regulated as mass-market drugs.  Compounded creams frequently are not approved by
the Food and Drug Administration because they are mixed in very limited amounts, and
it is considered impractical to test all the variations.[2]

6.    Compounded drugs make up one to three percent of the $300 billion
domestic prescription drug market.[3]

7.    According to Defense Department data, TRICARE paid $1.75 billion for
compounded drugs, including creams, during the 2015 fiscal year that ended in
September—eighteen times the amount paid three years earlier.[4]  Other federal
healthcare agencies also paid significant amounts for compounded drugs.  Medicare Part
D costs for compounded medications increased 625% between 2006 and 2015.  This
increase was more than 56% in 2015 alone, costing taxpayers more than $182 million
dollars.[5]  Express Scripts, a third party processor for both Medicare and Medicaid
reported substantial increases in compound drug prescriptions in 2015.[6]

8.    Under federal law, compounding pharmacies do not have to prove the
efficacy or safety of their products.  The industry is primarily regulated by the states,
which exercise varying degrees of scrutiny.

9.    While TRICARE has attempted to close loopholes in the compounded
drugs arena, extensive fraud continues in TRICARE and other government healthcare
programs.[7]  Despite health related issues and other concerns, Medicare Part B and D

---

[2] http://www.wsj.com/articles/u-s-probes-possible-fraud-linked-to-compounding-creams-1454790501.
[3] http://www.gao.gov/assets/670/666463.pdf
[4] See footnote 2.
[5] https://oig.hhs.gov/oei/reports/oei-02-16-00290.pdf .
[6] http://lab.express-scripts.com/lab/drug-trend-report (Medicare PDF)
[7] http://www.military.com/daily-news/2016/06/09/report-troops-duped-in-alleged-tricare-fraud.html

continue to cover compounded drugs in many situations.  Medicaid also covers

compounded medications.[8]

## I.    BACKGROUND

10.    For years Jensen and Valley View fraudulently billed government health care programs millions of dollars for compounded pain drugs which were obtained through the payment of kickbacks, "referral fees," that were medically unnecessary, through forged prescriptions for nonexistent patients and through other fraudulent means.

11.    The extent of the billings is illustrated by the fact that between on or about September 2015 and continuing until on or about June 2015, Valley View billed TRICARE, a health care program of the United States Department of Defense ("DOD") for claims involving 1,810 different TRICARE beneficiaries, of whom only approximately 15 lived within a twenty-mile radius of the Valley View storefront location.

12.    Although Relator had concerns about the legitimacy of Valley View's billings from the time she was retained to do an audit in December 2013, it was not until early 2015 the Relator learned of the fraudulent scheme.  Relator was working as an independent "auditor" for Valley View and Jensen to cure the denial of reimbursement by third party processors for claims made by Valley View.

13.    During meetings and telephone conferences with Jensen, Relator was told that Jensen compounded pain and other medications for other pharmacies that he referred to as "satellite" pharmacies, and that these pharmacies were engaging in the fraudulent conduct.  One of these pharmacies was Edward's Healthy Life Pharmacy d/b/a/ Ed's Healthy Living and Pharmacy.

---

[8] http://pharmacy.about.com/od/Insurance/a/Medicare-And-Drug-Compounding.htm

14.    Relator also learned that in furtherance of the fraud scheme, Jensen and Valley View created a "separate" billing entity to attempt to disguise the plan.  Trojan Medical Billing, Inc. was that entity.

15.    After a financial dispute arose between Relator and Jensen, she met at the request of Roub with Roub, Sinel and their attorney to discuss bringing a lawsuit against Jensen.  During the course of that meeting, and as a result of Sinel and his attorney's efforts to create an alliance between Relator and Sinel, Sinel disclosed the names of more than five hundred physicians, mostly from out of the State of California, who had engaged in fraudulent misconduct by writing fraudulent prescriptions, filled or at least provided to Valley View.  Most, if not all, of these prescriptions were written for TRICARE and other government health care beneficiaries.

16.    Thereafter, Relator terminated her relationship with Jensen and Valley View and met with various agents of the federal government to advise them about and assist them in their efforts to investigate the scheme.

17.    Pursuant to a subpoena, Relator turned over to federal investigators hundreds of pages of critical documentation relating to the fraudulent scheme devised and implemented by the Defendants.

18.    Relator's assistance and the documents she provided resulted in the criminal indictment and arrest of many defendants in June 2016.

19.    Beginning in or about September 2011, and continuing to in or about June 2015, in Los Angeles and Fresno Counties, within the Central and Eastern Districts of California, and elsewhere, Valley View, Jensen,  Sinel, Roub, Schoonover, Janda and their various front companies, together with John and Jane Doe 1-15, individually and by knowingly acting, conspiring, and agreeing with each other, defrauded the federal government of tens of millions of dollars through a variety of methods relating to fraudulently billing government health care programs for compounded medications, including, but not limited to the following:

a.      Knowingly and willfully soliciting or receiving remuneration in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program;

b.      Knowingly and willfully offering to pay or paying any remuneration to any person to induce such person to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program;

c.      Billing for compounded pain medications for nonexistent patients, or without the patient's knowledge, or for medically unnecessary medications, or where readily available FDA approved medications were available and could be safely prescribed for the patient;

d.      Knowingly prescribing "compounded" substances that were ordered from Defendants Jensen and Valley View in exchange for kickbacks and other financial benefits.

## II.    JURISDICTION AND VENUE

20.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 because Defendants Jensen and Valley View do business at 13966 Valley View Avenue, La Mirada, Los Angeles County, California 90638, within the Central District of California.  The Defendants transact business in the Central District of California where the drugs are compounded, mailed, ordered and sometimes prescribed and all or most of the acts and omissions proscribed by 31 U.S.C. §3729 *et seq.,* occurred in this State.

21.     This court has jurisdiction over the subject matter of this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331 and has personal jurisdiction over Defendants Valley View and Jensen and the other defendants because each of them does business and/or resides in the Central District of California.

22.    The facts and circumstances alleged in this complaint were disclosed by the Relator prior to them being publicly disclosed in a criminal, civil or administrative hearing, or in any congressional, administrative, or government accounting office report, hearing, audit investigation, or in the news media.

23.    Relator Linda DiBenedetto is an "original source" of the information upon which this complaint is based, as that term is used in the False Claims Act.

## III.    PARTIES

24.    The United States funds the provision of medical care through Government Healthcare Programs such as Medicare, Federal Employees' Health Benefits Program, TRICARE/CHAMPUS, CHAMPVA, and other agencies and programs, acting through the Centers for Medicare & Medicaid Services ("CMS") within the U.S. Department of Health and Human Services ("HHS"), the Department of Defense, and other federal agencies.

    a.    TRICARE provided health care coverage for Department of Defense beneficiaries worldwide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors.

    b.    Individuals who received health care benefits through TRICARE were referred to as TRICARE beneficiaries.  The defense Health Agency, an agency of the Department of Defense, was the military entity responsible for overseeing and administering the TRICARE program.

    c.    TRICARE provided coverage for certain prescription drugs, including certain compounded drugs that were medically necessary and prescribed by a licensed physician.  Express Scripts, Inc., administered TRICARE's prescription drug benefits.

    d.    TRICARE beneficiaries could fill their prescriptions through military pharmacies, TRICARE's home delivery program, network pharmacies, and non-network pharmacies.  If a beneficiary chose a network pharmacy, the pharmacy would collect any applicable co-pay from the beneficiary,

dispense the drug to the beneficiary, and submit a claim for reimbursement to Express Scripts, which would in turn adjudicate the claim and reimburse the pharmacy. To become a TRICARE network pharmacy, a pharmacy agreed to be bound by, and comply with, all applicable State and Federal laws. These laws and regulations specifically include those addressing fraud, waste and abuse.

e. Upon information and belief, Valley View was a TRICARE network pharmacy provider submitting millions of dollars in claims to TRICARE for reimbursement between 2011 and 2015.

f. MEDICARE provided benefits to individuals who were 65 years and older of disabled. Medicare was administered by the Centers for Medicare and Medicaid services, a federal agency under the United States Department of Health and Human Services.

g. Individuals who qualified for MEDICARE benefits were referred to as Medicare "beneficiaries". Each beneficiary was given a unique health insurance claim number. Health care providers who provided medical services that were reimbursed by Medicare were referred to as Medicare "providers."

h. To participate in MEDICARE, a provider was required to submit an application in which the provider agreed to comply with all Medicare-related laws and regulations. IF Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number," which was used for processing and payment of claims.

i. A health care provider with a Medicare provider number could submit claims to Medicare to obtain reimbursement for services and products provided to Medicare beneficiaries.

j. Most MEDICARE providers submitted their claims electronically pursuant to an agreement they executed with Medicare in which the providers

agreed that they: (a) were responsible for all claims submitted to Medicare by themselves, their employees, and their agents; (b) would submit claims only on behalf of those Medicare beneficiaries who had given their written authorization to do so; and (c) would submit claims that were accurate, complete, and truthful.

k. MEDICARE part D provided coverage for outpatient prescription drugs. Medicare beneficiaries were able to obtain Part D coverage through: (1) enrollment in one of the many prescription drug plans, which covered only prescription drugs and were offered by qualified private insurance plans (also called drug plan "sponsors") which received reimbursement from Medicare; or (2) a Medicare Advantage plan that covered both prescription drugs and medical services. A beneficiary was responsible for any deductible or co-payment required under his or her prescription drug plan.

l. Medicare reimbursed providers for certain compounded drugs that were medically necessary to the treatment of a beneficiary's illness or injury, were prescribed by a beneficiary's physician or a qualified physician's assistant acting under the supervision of a physician, and were provided in accordance with Medicare regulations and guidelines that governed whether a particular service or product would be reimbursed by Medicare.

m. Valley View was a MEDICARE pharmacy provider submitting millions of dollars in claims to Medicare for reimbursement between 2011 and 2015.

n. The Federal Employees' Compensation Act ("FECA") , Title 5, United States Code, Sections 8101, et seq. provided certain benefits to civilian employees of the United State, for wage-loss disability due to a traumatic injury or occupational disease sustained while working as a federal employee under the FECA program.

o. The Office of Workers' Compensation Programs, a component of the Department of Labor administered the FECA program, which was a federal

workers' compensation program focused on return to work efforts and was not a medical insurance or retirement plan.

p.   When a qualified employee suffered a work-related injury, the employee filed a claim for coverage with the Office of Workers' Compensation Programs ("OWCP") which then assigned a claim number to the claimant.

q.   To obtain reimbursement for prescription drugs provided to OWCP claimants ("beneficiaries"), a pharmacy had to submit its prescription claims for payment to OWCP, using the beneficiary's OWCP claim number.  By submitting a claim for reimbursement with OWCP, the pharmacy provider certified that the service or product for which reimbursement was sought was medically necessary, appropriate, and properly billed in accordance with accepted industry standards.

r.   OWCP would process the claims submitted by the provider, and if all required information was included, OWCP would reimburse the provider in accordance with an established fee schedule.

s.   Valley View submitted millions of dollars in claims to OWCP between 2011 and 2015 under the FECA program for compounded pain medications, for which OWCP paid Valley View.

t.   TRICARE, Medicare and the FECA program were "Federal Healthcare Programs" as defined by 42 U.S.C.§1320a-7b(f), that affected commerce. Pharmacy providers were prohibited from using personal health care information, which included a patient's name, date of birth, TRICARE number, Medicare HICN, or OWCP claim number, and other health care information, without the patient's knowledge and consent.

25.   Relator Linda DiBenedetto is a citizen of the United States and a resident of the State of California.  Relator performed an audit at the request of Jensen for Valley View to attempt to reclaim payments that were disallowed.  During the course of that audit Relator learned of the fraud perpetrated by Defendants and has worked extensively

1  with federal agents to advise them of the fraud and assist their investigation of these
2  defendants.

3      26.    Valley View Drugs, Inc. ("Valley View) was a pharmacy located at 13966
4  Valley View Avenue, La Mirada, California 90638, within the Central District of
5  California. Valley View operated primarily as a multi-state mail order pharmacy with
6  the vast majority of its revenue derived from mail order prescriptions and prescription
7  refills, primarily consisting of compounded pain medications.

8      27.    Between September 2011 and June 2015, Valley View billed TRICARE, a
9  health care program of the United States Department of Defense ("DOD") Military
10 Health System, for claims involving 1,810 different identified TRICARE beneficiaries,
11 of whom only approximately ten percent lived within a twenty-mile radius of the Valley
12 View storefront location.

13     28.    David Michael Jensen ("Jensen") owned and operated Valley View since
14 approximately 2000.

15     29.    Pro-Med Marketing, LLC ("Pro-Med") was a California Limited Liability
16 Company formed in February 2013 that purported to provide "marketing/consulting
17 services" to pharmacies.  Valley View was Pro-Med's only client.  Valley View funded
18 Pro-Med to pay "marketers" and physicians to generate prescriptions for compounded
19 pain medications.  Pro-Med's registered address was 13305 Penn Street, Suite 150,
20 Whittier, California.

21     30.    Western Medical Solutions, Inc. ("WMS") was a California corporation
22 formed in or about December 2009.  In or about 2011, WMS began recruiting
23 independent contractor "market" compounded pharmaceuticals (mostly pain
24 medications) to physicians on behalf of pharmacy clients.  WMS operated from its
25 registered address of 1781 Tara Way, San Marcos, California 92078.

26     31.    Gary Dean Schoonover ("Schoonover") was retained as an independent
27 contractor by WMS in about early 2011.  Between about March 2011 and about 2014,

28

Schoonover, working out of his residence in Clovis, California, "marketed"
compounded pain medications to physicians on behalf of Valley View.

32.    Samia Solutions, LLC ("Samia") was a California Limited Liability
Company formed by Sinel and Roub on or about March 26, 2012 for the purpose of
acting as a subagent of Pro-Med to generate prescriptions for compounded pain
medications for Valley View.  Samia's registered address was 28310 Roadside Drive,
Suite 137, Agoura Hills, California.

33.    John Pal Singh Janda ("Janda") was a licensed physician with a medical
clinic located at 6045 North First Street, Suite 103N, Fresno, California.  Between about
December 2001 and until about November 2013, Janda referred at least one hundred
and forty TRICARE beneficiaries and other government health care program
beneficiaries to Valley View with prescriptions for compounded pain medications.

34.    Edward's Healthy Living Pharmacy, Inc. ("Ed's") is a California
corporation that did business as Ed's Healthy Living and Pharmacy, located at 879 S.
Tustin Street, Orange, California, and was operated by Melany Phuong Truong.

35.    Trojan Medical Billing, Inc., ("Trojan Billing") is a California corporation
that was operated by Jensen and Valley View with its attorney service as its registered
agent and a listed business address as 14239 Rosecrans Avenue, La Mirada, California.

36.    John Doe 1-15 and Jane Doe 1-15 are others who participated in the
scheme devised and implemented by the named defendants.

## IV.    SUBSTANTIVE CLAIMS

37.    Relator repeats and realleges each allegation contained in paragraphs 1
through 36, above as if fully set forth herein.

38.    Beginning on or about September 2011, and continuing until about June
2015, in Los Angeles and other California Counties, within the Central District of
California and elsewhere, the defendants knowingly and willfully solicited or received
remuneration in return for referring an individual to a person for the furnishing or
arranging for the furnishing or any item or service for which payment may be made in

1  whole or in part under a federal health care program in violation of various federal

2  statutes, including but not limited to 42 U.S.C. § 1320a-7b(b)(2)(A ) and the False

3  Claims Act.

4      39.    Valley View, Pro-Med, Jensen, Janda, Sinel, Roub, Schoonover, Ed's,

5  Trojan Billing, John Doe and Jane Doe 1-15, knowingly, individually and in conspiracy

6  with each other, agreed to defraud TRICARE and other federal health care programs by

7  submitting false claims and false statements to these entities.  In furtherance of the

8  fraudulent scheme, these defendants paid kickbacks and bribes in violation of the Stark

9  Laws.

10     40.    Valley View, Pro-Med, Jensen, Janda, Sinel, Roub, Schoonover, Ed's and

11  John Doe and Jane Doe 1-15 knowingly and willfully offered to pay or paid

12  remuneration to any person to induce such person to refer an individual to a person for

13  the furnishing or arranging for the furnishing or any item or service for which payment

14  may be made in whole or in part under a federal health program, in violation of 42

15  U.S.C. §1320a-7b(b)(1)(A) and (2)(A) and other federal and state laws including the

16  False Claims Act and Stark Laws.

17     41.    Valley View, Jensen and the other defendants would make and receive

18  undisclosed payments in connection with the prescription of compounded pain

19  medications and other compounded pharmaceuticals to beneficiaries.  These payments

20  would include: (1) payments from Valley View to "marketers" (also known as "sales

21  reps") in exchange for referring beneficiaries and their prescriptions for compounded

22  pain and other medications to Valley View; and (2) payments from Valley View to

23  physicians and physician assistants, either directly or through their "sales reps" in

24  exchange for prescribing certain compounded pain and other medications to

25  beneficiaries for dispensing at Valley View; and upon information and belief to certain

26  beneficiaries.

27

28

42.    In an attempt to disguise the illegal nature of the payments from Valley View to "sales reps" and prescribing physicians/physician's assistants, Jensen and other defendants would:

(a)    form marketing companies such as Pro-Med and use it(them) to pay "sales reps" and prescribing physicians referral fees for steering compounded medication prescriptions for TRICARE and others to Valley View;

(b)    Valley View would pay the referral fees to "sales reps" and disguise the payments as commission fees under sham marketing agreements including those designated "Marketing Subagent Agreements;"

(c)    Provided for payment of a significant percentage of the gross revenue received by Valley View on claims submitted to government healthcare programs;

(d)    Used the sales reps as "pass throughs" to make payments to physicians and physician assistants of kickbacks and "commissions."

43.    In an effort to conceal the referral payments they were receiving, prescribing physicians who would receive a percentage of Valley View's gross revenue for each prescription, including defendant Janda, would have Pro-Med pay referral fees to loosely related or trusted individuals, instead of directly to them.

44.    Instead of providing compounded pain medication prescriptions directly to beneficiaries, who would then be free to select a pharmacy, the "marketers" including Sinel, Roub and Schooner, or prescribing physicians, including Janda, would deliver the prescriptions directly to Valley View for dispensing via facsimile.

45.    Jensen, Janda, Sinel, Roub and Schoonover and John and Jane Doe 1-15, would prescribe and cause to be prescribed compounded medications to be dispensed at Valley View for federal health care program beneficiaries, who typically would fall into one of three general categories: (1) beneficiaries who had their personally identifying health information misappropriated and used for compounded pain and other medications prescriptions without their knowledge; (2) beneficiaries who had an

existing patient/physician relationship with a prescribing physician/physician assistant,
but who never discussed or requested a compounded pain or other medication; or (3)
beneficiaries who discussed compounded pain medications with their physicians/
physician assistant but who did not have a medical need for such a prescription, as
opposed to an analogous FDA-approved drug.

46.    Jensen, Janda, Sinel, Roub, Schoonover, Ed's, Trojan Billing, John Doe 1-
15 and Jane Doe 1-15, would prescribe and cause to be prescribed compounded
medications to be dispensed at Valley View or through Ed's.

47.    In order to track referral fees, Valley View, Jensen, Trojan Billing and the
other defendants, would make different arrangements, including: (1) assigning
"marketers" unique identifier codes for tracking purposes; (2) requiring prescriptions
generated by "marketers" to bear the "marketers'" assigned codes; (3) using computer
software programs for billing and prescription tracking, and "marketers" access to
certain software programs to facilitate the tracking of referral fees; and (4) preparing
and emailing detailed spreadsheets that tracked referral fees owed to "marketers: and
prescribing physicians based on each prescription dispensed at Valley View. These
spreadsheets would often include the health care benefit program applicable to the
beneficiary and prescription, including TRICARE, Medicare and the FECA program.

48.    Defendant Jensen, in furtherance of the fraud, caused Valley View to
transfer large sums of money to Pro-Med to pay referral fees on prescriptions generated
by "marketers," including defendants Sinel, Roub and Schoonover.

49.    When Relator conducted audits in order to attempt to recoup payments for
some of these drugs, Valley View and Jensen directed Relator to refrain from direct
contact with purported prescribing medical providers, instead requiring the "marketers"
to provide supporting payment information. Upon information and belief, some of the
data provided pursuant to these audits included forged prescriptions, forged medical
records, and sham patient records.

FALSE CLAIMS ACT COMPLAINT

50.    The compounded pain and other medications provided by Valley View contained false billing data regarding the content of the compound.  Trojan Billing assisted in providing these fraudulent billing statements submitted to federal healthcare agencies.

51.    In many instances, government health care programs were billed for a certain quantity of substances when a review of the mixture revealed that part of the billed for drugs were retained by Valley View who overcharged for the quantity of medications actually provided.

52.    Edward's Healthy Living Pharmacy contacted Relator through its operator, Melany Phuong Truong, seeking to retain her for third party audit assistance.  Ed's advised that they did not have any invoices for the compounded medicines dispensed by it and that those invoices were held by "other pharmacies."  Upon information and belief, the other pharmacy referred to was Valley View.

53.    Between about September 2011 and about June 2015, Valley View was paid at least approximately twenty million dollars ($20,000,000) by federal "health care programs," for claims for compounded pain medications.

54.    Between about September 2011 and about June 20, 2015, Jensen through Valley View and Pro-Med in exchange for compound medication prescriptions paid: (a) Sinel and Roub through Samia about $4,707,974; (b) WMS approximately $4,596,897; (c) Janda through an intermediary relative, approximately $345,000.

**V.    CAUSES OF ACTION**

**COUNT I**

**FALSE CLAIMS ACT**
**FALSE CLAIM FOR PAYMENT OR APPROVAL**
**31 U.S.C. §3729(a)(1)(A) and (C) (2010)**

55.    Relator repeats and realleges each allegation contained in paragraphs 1 through 54, above as if fully set forth herein.

56.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended.

57.   Defendants, individually and by and through their officers, agents, employees, related companies, subsidiaries and holding companies, knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A)(2010).

58.   Defendants, individually and by and through their officers, agents, and employees, authorized and encouraged the actions of its various officers, agents, and employees to take the actions set forth above.

59.   As a result of the acts of Defendants, the United States Government reimbursed the Defendant Valley View, Jensen, their sales reps and the prescribing physicians/physician assistants for compounded pain and other medications which were either not medically necessary, provided to patients without their knowledge or consent, prescribed but not provided to a legitimate patient, provided to the sales rep and/or sales reps' family and friends and otherwise resulted in the governments making payments that it otherwise would not have paid.

60.   Every statement, billing and claim for payment submitted to the federal health insurance programs for each and every patient who was prescribed these compounded pain and other mediations which are different from those properly prescribed represents a false or fraudulent claim for payment.

61.   By reason of Defendants' acts the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial. Federal health insurance programs have paid tens of thousands of dollars for compounded medications that were not medically necessary, not provided to the patient, not subject to proper copayments, or otherwise improperly billed or provided that they otherwise would not have paid for but for Defendants' fraudulent and illegal conduct.

62.   As set forth in the preceding paragraphs, Defendants have knowingly violated 31 U.S.C. § 3729 *et seq.* and have thereby damaged the United States Government. The United States is entitled to three times the amount by which it was damaged, to be determined at trial, plus a civil penalty of not less than the minimum

amount permitted by law during the year of the offense and not more than the maximum amount permitted by law during the year of the offense for each false claim submitted, paid or approved.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, as follows:

(a)   That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims alleged within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq.* provides;

(b)   That civil penalties of the maximum amount permitted by law be imposed for each and every false claim that Defendants caused to be presented to the Government Healthcare Programs under the Federal False Claims Act;

(c)   That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)   That the Relator be awarded the maximum amount allowed pursuant to the Federal False Claims Act; and

(e)   That the Court award such other and further relief as it deems proper.

## COUNT II

**FALSE CLAIMS ACT**
**FALSE RECORDS OR STATEMENTS**
**31 U.S.C. §3729(a)(1)(B) and (C) (2010)**

63.   Relator repeats and realleges each allegation contained in paragraphs 1 through 54, above as if fully set forth herein.

64.   This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended.

65.   Defendants, individually and by and through their officers, agents, employees, related companies, subsidiaries and holding companies, knowingly made,

used, or caused to be made or used, false records or statements material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B) (2010).

66.    As set forth in the preceding paragraphs, Defendants provision of medically unnecessary or incorrect prescriptions defrauded the United States by getting false and/or fraudulent Medicare and other Government health care claims paid in violation of 31 U.S.C. § 3729(a)(1)(C) (2010).

67.    Defendants, individually and by and through their officers, agents, and employees, authorized and encouraged the actions of its various officers, agents, and employees to take the actions set forth above.

68.    As a result of the acts of Defendants the United States Government reimbursed Defendant Valley View and Jensen and the other Defendants for compounded medicines based upon fraudulent documents resulting in the government making payments it would not otherwise have made. Every statement, billing and claim for payment submitted to the federal health insurance programs for each and every prescription procured by fraud, as described here, represents a false or fraudulent claim for payment.

69.    By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

70.    As set forth in the preceding paragraphs, Defendants have knowingly violated 31 U.S.C. § 3729 *et seq*. and have thereby damaged the United States Government. The United States is entitled to three times the amount by which it was damaged, to be determined at trial, plus a civil penalty of not less than the minimum penalty set by law for the time of the fraudulent conduct or payment and not more than the maximum penalty provided by law for each false claim submitted, paid or approved.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, as follows:

(a)    That the United States be awarded damages in the amount of three times the damages sustained by the U.S. because of the false claims alleged

within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. §
3729 *et seq.* provides;

(b)   That civil penalties of the maximum allowed by law be imposed for each
and every false claim that Defendant(s) caused to be presented to the
Government Healthcare Programs under the Federal False Claims Act;

(c)   That pre- and post-judgment interest be awarded, along with reasonable
attorneys' fees, costs, and expenses which the Relator necessarily incurred
in bringing and pressing this case;

(d)   That the Relator be awarded the maximum amount allowed pursuant to the
Federal False Claims Act; and

(e)   That the Court award such other and further relief as it deems proper.

## COUNT III

### STARK LAW
### 42 U.S.C. §1395nn(a)(1)

71.   Relator repeats and realleges each allegation contained in paragraphs 1
through 54, above as if fully set forth herein.

72.   This is a claim for treble damages and penalties under the Stark Law, 42
U.S.C. § 1395nn (g), *et seq.*, as amended.

73.   Defendants, individually and by and through their officers, agents,
employees, related companies, subsidiaries and holding companies, knowingly made
prohibited referrals to Valley View and related physicians/physician assistants and
entities for the furnishing of compounded pain and other mediations in violation of 42
U.S.C. § 1395nn (2010).

74.   Defendants, individually and by and through their officers, agents, and
employees, authorized and encouraged the actions of its various officers, agents, and
employees to take the actions set forth above.

75.   As a result of the acts of Defendants, the United States Government
reimbursed Valley View for compounded pain and other medications that it otherwise

1  would not have paid had Defendants properly reported the referral payments and

2  payment arrangements/relationship.

3      76.    Every billing for compounded medications by Valley View as a result of

4  Defendants' illegal conduct represents a prohibited referral.  Each claim for

5  reimbursement for such, submitted to a federal health insurance program, represents an

6  unlawful billing or claim.

7      77.    By reason of Defendants' acts, the United States has been damaged, and

8  continues to be damaged, in a substantial amount to be determined at trial.  Federal

9  health care programs have paid thousands of claims for compounded medicines

10  allegedly dispensed by Valley View as a result of referrals, fabrications and payments of

11  "referral" fees, commissions and kickbacks prohibited by the Stark Law.  These

12  prohibited claims to federally funded health care programs were a foreseeable and

13  intended result of Defendants' illegal acts.

14      78.    As set forth in the preceding paragraphs, Defendants, and each of them,

15  have knowingly violated 42 U.S.C. § 1395nn *et seq*. and have thereby damaged the

16  United States Government.  The United States is entitled to three times the amount by

17  which it was damaged, to be determined at trial, plus a civil penalty of not more than

18  $15,000.00 for each prohibited claim paid or approved, and not more than $100,000.00

19  for each arrangement or scheme.

20      79.    As set forth in the preceding paragraphs, Defendants, and each of them,

21  have knowingly violated 42 U.S.C. § 1395nn (f) *et seq*. by failing to report information

22  require by law and thereby damaged the United States Government.  The United States

23  is entitled to $10,000.00 per day for each day for which reporting was required.

24      WHEREFORE, Relator respectfully requests this Court enter judgment against

25  Defendants, as follows:

26      (a)    That the United States be awarded damages in the amount of three times

27            the damages sustained by the U.S. because of the prohibited referral and

28

FALSE CLAIMS ACT COMPLAINT

claims alleged within this Complaint, as the Stark Law, 42 U.S.C. § 1395nn *et seq.* provides;

(b)    That civil penalties of $15,000.00 be imposed for each and every prohibited bill or claim that Defendants caused to be presented to the Government Healthcare Programs under the Stark Law;

(c)    That other civil sanctions and penalties including reimbursement for all payments made in violation of the Stark Law, $100,000.00 for the scheme and $10,000.00 per day for failure to report;

(d)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(e)    That the Relator be awarded the maximum amount allowed pursuant to the Stark Law and Federal False Claims Act; and

(f)    That the Court award such other and further relief as it deems proper.

**PRAYER FOR RELIEF**

WHEREFORE, Relator, on behalf of the United States and on her own behalf, demands judgment against Defendants, and each of them, as follows:

A.    That Defendants cease and desist from violating 31 U.S.C. §3729 *et seq.*;

B.    That this Court enter judgment against the Defendants in an amount equal to three times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of the maximum penalty permitted by law on the date of the offense or judgment for each false claim, together with the costs of this action, with interest, including the cost to the United States Government for its expenses related to this action;

C.    That Relator be awarded all costs incurred, including her attorneys' fees;

D.    That, in the event the United States Government subsequently intervenes in this action, Relator be awarded 25% of any proceeds of the claim and that, in the event

1    the United States Government does not intervene in this action, Relator be awarded 30%

2    of any proceeds;

3         E.    That the United States and Relator receive all relief, both in law and in

4    equity, to which they are entitled.

5

6                          **DEMAND FOR JURY TRIAL**

7         Pursuant to Rule 38 of Federal Rules of Civil Procedure, Plaintiffs and Relator

8    hereby demand a trial by jury.

9    Dated: July ___, 2016.                    Respectfully submitted,

10

11

12                                            Ronald L.M. Goldman, Bar No. 33422
                                              rgoldman@baumhedlundlaw.com
13                                            Mark Schlein, FL Bar No. 0000700
                                              mschlein@baumhedlundlaw.com
14                                            (*Pro Hac Vice to be submitted*)
                                              BAUM HEDLUND ARISTEI & GOLDMAN, PC
15                                            12100 Wilshire Blvd., Suite 950
                                              Los Angeles, CA 90025
16                                            Tel: 310-207-3233
                                              Fax: 310-207-4204
17

18                                            ***Attorneys for Relator***

19

20

21

22

23

24

25

26

27

28

FALSE CLAIMS ACT COMPLAINT

ORIGINAL

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

United States of America, ex rel., Linda DiBenedetto

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

Valley View Drugs, Inc.; David Michael Jensen; Pro-Med Marketing, LLC; John Pal Singh Janda; Western Medical Solutions, Inc.; Gary Dean Schoonover; Samia Solutions, LLC; Michael Steven Sinel; (continued on attachment)

**(b) County of Residence of First Listed Plaintiff** _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Los Angeles
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
Ronald L.M. Goldman
Baum Hedlund Aristei & Goldman, P.C.
12100 Wilshire Blvd., Suite 950, Los Angeles, CA 90025
(310) 207-3233

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☒ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding   ☐ 2. Removed from State Court   ☐ 3. Remanded from Appellate Court   ☐ 4. Reinstated or Reopened   ☐ 5. Transferred from Another District (Specify)   ☐ 6. Multidistrict Litigation - Transfer   ☐ 8. Multidistrict Litigation - Direct File

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ Exceeds $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
31 U.S.C. 3729, et seq. - False Claims Act (false claims for payments made to Medicare, etc.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☒ 376 Qui Tam (31 USC 3729(a)) | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 400 State Reapportionment | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 410 Antitrust | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 430 Banks and Banking | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 450 Commerce/ICC Rates/Etc. | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 460 Deportation | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 470 Racketeer influenced & Corrupt Org. | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 480 Consumer Credit | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 891 Agricultural Acts | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 893 Environmental Matters | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 895 Freedom of Info. Act | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 896 Arbitration | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**   Case Number:   CV16-05504

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE**: Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [ ] Yes  [X] No<br><br>If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | [ ] Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | B.1. Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | [ ] YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| [X] Yes  [ ] No | | [X] NO. Continue to Question B.2. |
| | B.2. Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | [ ] YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | | [X] NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | C.1. Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | [ ] YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| [ ] Yes  [X] No | | [ ] NO. Continue to Question C.2. |
| | C.2. Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | [ ] YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | | [ ] NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [X] |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [X] |

| D.1. Is there at least one answer in Column A? | D.2. Is there at least one answer in Column B? |
|---|---|
| [ ] Yes  [X] No | [ ] Yes  [X] No |
| If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E, below, and continue from there.<br>If "no," go to question D2 to the right. ➡ | If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question E, below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below.  ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | WESTERN |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | [ ] Yes  [X] No |

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court**?      ☒ NO      ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**:  Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?      ☒ NO      ☐ YES

If yes, list case number(s): _____

**Civil cases** are related when they (check all that apply):

☐   A. Arise from the same or a closely related transaction, happening, or event;

☐   B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐   C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note:  That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐   A. Arise from the same or a closely related transaction, happening, or event;

☐   B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐   C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____     DATE: July 22, 2016

**Notice to Counsel/Parties:**  The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended.  Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

CIVIL COVER SHEET - Attachment

ADDITIONAL DEFENDANTS

Michael David Roub
Edward's Healthy Living Pharmacy, Inc.
Trojan Medical Billing, Inc.
John Doe 1-15
Jane Doe 1-15